John Thomas WHITE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20801.

United States Court of Appeals
Fifth Circuit.

April 28, 1964.

Rehearing Denied May 28, 1964.

O. L. Crumbley, Macon, Ga., for appellant.

Gary B. Blasingame, Asst. U. S. Atty., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before MARIS,* GEWIN, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant, a night policeman in the small town of Sparta, Georgia, was charged in one count of an indictment with aiding and abetting unknown persons in entering a bank insured by the Federal Deposit Insurance Corporation with intent to commit larceny, in violation of 18 U.S.C.A. § 2113(a); and in another count with aiding and abetting unknown persons in taking and carrying away funds in the possession of that bank, in violation of 18 U.S.C.A. § 2113 (b). He was sentenced to ten years imprisonment upon a judgment of conviction entered on a jury verdict of guilty as to both counts.

His claim here is that the evidence was insufficient to support the verdict, and that the District Court thus erred in denying his motion for judgment of acquittal made both at the close of the government's evidence and upon the close of all of the evidence. It is also asserted that the court erred in failing to give a requested charge on circumstantial evidence to the effect, in the language of the request, that it must be inconsistent with any reasonable hypothesis of innocence where relied on to prove the government's case.

Appellant was the only policeman on duty on the night of March 10, 1962 in

* Of the Third Circuit, sitting by designation.

Sparta. During that night an automobile agency was burglarized, and an acetylene and oxygen tank taken. During the same night another automobile agency was burglarized and a striker used to fire acetylene torches taken. The first automobile agency was located approximately three quarters of a mile from the bank that was burglarized while the other was located directly across the street from the bank. Entry was gained into the bank by forcing entrance through the front door. The vault was entered by cutting a rectangular hole in the vault door with an acetylene torch. The hole was of sufficient size for a man to enter through it. Entry to safety deposit boxes was gained by forcing open their doors. The two tanks, the striker, welder's goggles and a pry bar were left in the bank. It was undisputed that the bank was burglarized, some twelve thousand eight hundred dollars taken therefrom, and that it was insured by the Federal Deposit Insurance Corporation. The problem facing the prosecution was to connect appellant with the crime, and its success or lack of success in so doing is the central issue before us.

At 6:00 A.M. on the morning of March 11 he was found handcuffed to the steering wheel of the police car assigned to him. It was on the parking lot at the burglarized automobile agency located on the edge of town, and about three quarters of a mile from the bank. His gun was on the back floor board of the car and the ignition keys to the car were on the right front floor board. The horn and siren on the automobile had been disconnected.

Appellant, upon being released, and over the course of that day and the next two, told various conflicting stories of how he happened to be handcuffed. He was interviewed by agents of the Federal Bureau of Investigation on five occasions during the three day period. He gave two statements in writing, in addition to several oral statements. He came under suspicion because of the inherent improbability of his predicament in the eyes of the investigating officers, and because of the almost immediate discovery of a serious conflict between his first story and statements of other witnesses. His statements form the basis of conviction, and the sufficiency of the evidence rests on them.

They made out a story of an approach to appellant by the brother of a female acquaintance in an effort to obtain his cooperation in burglarizing two or three places in Sparta, of being advised by one of the burglars on the night in question that they had been sent by the brother, and that appellant would receive one third of the loot from the burglary of the bank. The following is contained in one of the statements which appellant gave in writing:

"I didn't tell him specifically to go ahead and burglarize the places but he could tell by my actions that I assented to go along with them."

At the end of this statement he wrote, just above his signature:

"I have wread (sic) this statement of this and to (sic) other pages and it is true and correct."

The question presented depends on whether or not appellant was connected to the burglary of the bank. He was on duty. He was the only policeman on duty. He was seen with a stranger. He claimed the stranger was a minister seeking gas. He took the stranger to the local cafe for coffee. He later claimed that the stranger was one of the burglars and that he was under his compulsion for several hours, even when talking to local citizens, and visiting in the cafe. At one time his story was that he was accosted by four men with guns and subjected to their control at 2:00 A.M. but it turned out that he was on duty conversing with local citizens at 3:00 A.M. He then changed his story to place three men in the gang, and the time at 4:00 A.M. He told the story orally and in writing about the approach on him by the brother of his female friend, but denied it on the trial.

 His extra-judicial statements in this regard were corroborated by the

sister who testified for the defense, and substantiated certain other parts of the statements. Although she denied any knowledge of the approach, and of having driven to Sparta on the night of March 10 to bring word to appellant that someone would see him that night, calling no names; it was clear from the evidence that she was close to him, that he knew her brother and that they were all together on the night when the approach was said to have been made. She did visit appellant in Sparta on the night in question, saying her purpose was to bring his supper to him from her home in Thompson, Georgia. All in all, the evidence aside from what was contained in the statements, was sufficient to corroborate the admissions of the statements. It met the substantial independent evidence sufficient to establish the trustworthiness of the statements standard of Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; if, indeed, corroboration was necessary where the existence of the crime, i. e., the *corpus delicti* was indisputably established as here, save for connecting appellant to it. See Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. See also text of Footnote 15, Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In either event, the admissions were sufficient to connect appellant to the burglary.

This leaves the question of whether the court erred in not giving the requested charge. The court properly instructed the jury on the standards for determining reasonable doubt, and this obviated any requirement that the requested charge be also given. Holland v. United States, 1954, 348 U.S. 121, 75 S. Ct. 127, 99 L.Ed. 150.

It being clear that no proposition amounting to error is presented, the judgment must be affirmed. However, it is argued that appellant received an unusually stiff sentence in view of his record of no provious criminal offenses, and in light of the fact that no one else has been prosecuted for the bank burglary. This contention, even if it should excite our sympathy, would avail appellant nothing for that is a matter that addresses itself to the District Court. Rule 35, F.R.Crim.P., and see Sullivan v. United States, 5 Cir., 1963, 317 F.2d 101.

Affirmed.