**Daniel HERRERA, Jr., Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 24406.

United States Court of Appeals
Fifth Circuit.

Oct. 26, 1967.

Rehearing Denied Dec. 6, 1967.

J. Douglas McGuire, San Antonio, Tex., for appellant.

Jeremiah Handy, Asst. U. S. Atty., Ernest Morgan, U. S. Atty., Western Dist. of Texas, Andrew L. Jefferson, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before WISDOM, THORNBERRY and GOLDBERG, Circuit Judges.

PER CURIAM:

Herrera was indicted for having fraudulently or knowingly received, concealed, and facilitated the transportation of a narcotic drug in violation of 21 U.S.C.A. § 174. The defense was entrapment.

After receiving from the district judge an enlightening and elucidating charge on the defense of entrapment, the jury found Herrera guilty.

The testimony viewed in the light most favorable to the government, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (and the decisions in train thereof), clearly sustains the jury's verdict. The stipulated testimony of Herrera's witness, Joe M. Jasso, Jr., was the major piece of evidence at the trial. According to the stipulation Jasso, if he testified at trial, would have said that he and Herrera were to leave for California in order to begin work and were staying at Jasso's home pending their departure. On September 14 a mutual acquaintance, Tony Contreras, came by and pleaded with Herrera to help him (Contreras) secure the narcotics for a friend from Dallas. Jasso would say, moreover, that neither he nor Herrera were engaged in nor intended to engage in narcotics transactions and that Herrera finally agreed to buy the heroin for Contreras only after repeated pleas and offers of "first, money and then money and a portion of the narcotics to be obtained if Herrera would only help him [Contreras] this one time." Jasso would have added, "that Herrera had expressed to him on several occasions a desire to get away from San Antonio and thereby sever all contact or relationship with anyone trafficking or using narcotics so that he, Herrera, might get a fresh start." The stipulation went on to assert that, after Herrera agreed, Contreras left Jasso's home and returned with another man in the car to pick up Herrera. Some thirty minutes later Herrera returned to the house where he and Jasso remained until they left for California.

Narcotics agent Ortiz testified that Contreras called him on September 14 and that it was he, Ortiz, who accompanied Contreras when the latter picked up Herrera. Ortiz related the transactions in the car as follows:

"We discussed narcotics. I asked Mr. Herrera if the narcotics was good or of good quality. He said: 'Yes.' I asked him what the price be per gram and he replied that it would be $50.00."

\* \* \* \* \* \*

"I asked Mr. Herrera why the gram was going to cost $50.00 and he stated that he expected to make some money for himself."

Ortiz then testified that they parked near a bar while Herrera went in, that Herrera came back to ask for payment in advance, and that after a slight argument Ortiz paid Herrera. Herrera went back into the bar and returned in two or three minutes. He got into the back seat of the car and, after Contreras had driven away, handed Ortiz a package containing heroin.

Ortiz testified that prior to September 14 neither Herrera nor Contreras had been kept under surveillance by Ortiz or by any other agent of the Narcotics Bureau. Narcotics agent Plase corroborated Ortiz's testimony concerning the events of September 14 and concerning the status of the informant, Contreras.

Ortiz's testimony pictures Herrera as an efficient dealer in narcotics whose perversion was capitalistic, not altruistic. Herrera counters with a testimonial by his friend, Jasso, which itself indicates both Herrera's desire for "a portion of the narcotics to be obtained" and a close kinship between Herrera and narcotics "trafficking." We are convinced that the jury, in its traditional sifting and evaluating process, could not be faulted for concluding that Herrera's criminal conduct was not "the product of the creative activity of its [the government's] own officials." Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413, 422, quoted in Accardi v. United States, 5 Cir. 1958, 257 F.2d 168. See also Jones v. United States, 5 Cir. 1960, 278 F.2d 841; United States v. Smalls, 2 Cir. 1966, 363 F.2d 417, 419–420. Herrera was not an innocent cajoled or seduced into crime.

Affirmed.