**Joseph Michael LACAZE, Charles William Acevedo, Douglas Arceneaux and Virginia Cain, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 23060.**

United States Court of Appeals Fifth Circuit.

March 22, 1968.

518

Robert M. Acevedo, John M. Sekul, Biloxi, Miss., for appellants.

E. Donald Strange, Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for appellee.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

The four appellants, Joseph Michael Lacaze, Charles William Acevedo, Douglas Arceneaux and Virginia Cain, were convicted by a jury of the unlawful sale of narcotic drugs and of conspiracy to sell narcotic drugs in violation of Section 4705(a)[1] and Section 7237(b)[2] of the Internal Revenue Code. They bring eight separate specifications of error on appeal. Our rejection of all of them will follow a summary of the facts.

On May 11, 1965, Joseph Lacaze met a man known as Jimmy Cortez, a former drug addict who had twice been convicted of crimes, at a bonding company in New Orleans, Louisiana. After exchanging conversational pleasantries the two went for coffee, and Lacaze told Cortez of his desire to sell a quantity of narcotics. Cortez said that he thought he could find a buyer but that he wanted to see the drugs first. The two then left the cafe and went to a motel, where they met Acevedo and Cain. Lacaze informed the latter two that he and Cortez were going to Biloxi, Mississippi, to inspect the narcotics. He then took Cortez to the Travel Inn Motel in Biloxi, to a room occupied by Arceneaux. Lacaze told Arceneaux to get the narcotics because they had a buyer. Arceneaux left the room and was gone for approximately ten minutes, whereupon he displayed the drugs to Cortez who put a $500.00 price on them. Lacaze and Cortez then left Biloxi for New Orleans and a buyer. Cortez, however, went to the Bureau of Narcotics in New Orleans and related the story to narcotics agents. Agent Compton agreed to present himself as a buyer and later met with Lacaze to discuss the types and prices of the drugs. Then Compton, Lacaze, and Cortez drove to the Travel Inn Motel in Biloxi, where

1. "Chapter 39—Regulatory taxes
Subchapter A—Narcotic Drugs and Marihuana
    *    *    *    *    *
§ 4705. Order forms
(a) General requirement.—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate." 26 U.S.C.A. § 4705 (1967).

2. "Chapter 75—Crimes, Other Offenses and Forfeitures Subchapter A—Crimes
    *    *    *    *    *
§ 7237. Violation of laws relating to narcotic drugs and to marihuana
    *    *    *    *    *
"(b) Sale or other transfer without written order.—Whoever commits an offense, or conspires to commit an offense,

described in section 4705(a) or section 4742(a) shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000. For a second or subsequent offense, the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000. If the offender attained the age of 18 before the offense and—
    (1) the offense consisted of the sale, barter, exchange, giving away, or transfer of any narcotic drug or marihuana to a person who had not attained the age of 18 at the time of such offense, or
    (2) the offense consisted of a conspiracy to commit an offense described in paragraph (1), the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000." 26 U.S.C.A. § 7237 (1967).

they met Arceneaux. They experienced some difficulty in determining the whereabouts of the drugs, but eventually Cain and Acevedo entered the motel room and the former said, "We've got the stuff." Shortly thereafter Acevedo remarked in the presence of all appellants, "We have got it and it is in a safe place. * * *" Agent Compton and Cortez went to a drive-in where the drugs were to be delivered. Lacaze was arrested as he made the delivery, and the other three appellants were arrested a short time later.

The four appellants were tried before a jury and were found guilty on both counts. Lacaze was sentenced to 15 years on each count to run concurrently; Acevedo and Arceneaux, to nine years on each count to run concurrently; and Cain, to six years on each count to run concurrently. From these convictions the appellants now appeal. We find no substantiality to any of the following arguments marshalled for reversal:

(1) There was insufficient evidence of conspiracy;[3]

(2) The district court committed reversible error by its reprimand of counsel for appellants in the presence of the jury;

(3) The appellants were denied a public trial because of the temporary locking of a court room door;

(4) The district court's instructions to the jury were too long and confusing;

(5) The evidence conclusively proved unlawful entrapment by the government;

(6) The appellants were denied rights established by *Miranda* and *Escobedo*;

(7) The motion for new trial should have been granted;

(8) The sentences imposed were severe and excessive.

### (1) Conspiracy.

The foregoing comings, goings, and convergings convince us that a con-spiracy was afoot. It is, of course, a settled principle that a showing of association alone is insufficient to establish a conspiracy. Ah Ming Cheng v. United States, 5 Cir. 1962, 300 F.2d 202; Glover v. United States, 10 Cir. 1962, 306 F.2d 594, 595; Evans v. United States, 9 Cir. 1958, 257 F.2d 121, 126, cert. den., 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99. However, the prosecution need not establish that all defendants directly handled the drugs. Rodriguez v. United States, 5 Cir. 1967, 373 F.2d 17, 18. See also United States v. Wright, 7 Cir. 1962, 309 F.2d 735, 737–738, cert. den., 1963, 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733; United States v. Rossi, 2 Cir. 1955, 219 F.2d 612, 614, cert. den., 349 U.S. 938, 75 S.Ct. 782, 99 L.Ed. 1266. Nor must the conspiracy be proved by direct evidence. "The proof, by the very nature of the crime, must be circumstantial and therefore inferential to an extent varying with the conditions under which the crime may be committed." Direct Sales Co. v. United States, 1943, 319 U.S. 703, 714, 63 S.Ct. 1265, 1270, 87 L.Ed. 1674, 1683. See also Paoli v. United States, 1957, 352 U.S. 232, 236, 77 S.Ct. 294, 1 L.Ed.2d 278, 282 (fn. 4 therein and accompanying text).

The respected and revered admonition in Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, that "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it," has added relevance to the case at bar when we consider that the Supreme Court was reviewing a conspiracy conviction. In fact, after expressing the above admonition the Court continued: "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collection of circumstances.'"

In the instant case the involvement of Lacaze and Arceneaux was clearly es-

---

3. The appellants devote two points on appeal to this issue; but even in their brief indicate that the two points concern a single issue.

tablished by the testimony of Cortez and Agent Compton. Lacaze made the initial approach to Cortez, advised Cain and Acevedo that he had a buyer for their drugs, drove Cortez to Biloxi, led Cortez and Compton back to Biloxi, and made the delivery at the drive-in. Arceneaux had the drugs in his keeping and displayed them to Cortez for the first time. It is obvious that he understood the plan and was taking some action toward the ultimate sale. Acevedo and Cain were less involved, but the conclusion that they had some knowledge of the plan and performed some acts of participation is reasonable if not inescapable. They were apprised of the fact that there was a prospective buyer. They appeared in Biloxi after Compton and Cortez had arrived, and they made statements indicating that they knew where the drugs were. They drove with Lacaze to the drive-in for the purpose of making delivery.

■ A conspiracy is seldom born of "open covenants openly arrived at." In the majority of instances proof of the existence of a conspiracy must rest upon inferences drawn from relevant and competent circumstantial evidence, including the conduct of the defendants. The evidence here warrants the jury's inferences that all four appellants knowingly participated in the narcotics transaction. Rodriguez v. United States, 5 Cir. 1967, 373 F.2d 17, 18; Gonzalez-Alonso v. United States, 9 Cir. 1967, 379 F.2d 347, 350. Cf. Rivard v. United States, 5 Cir. 1967, 375 F.2d 882, 888.

### (2) Reprimand of Counsel.

■ During the trial the judge told counsel for the appellants that he was not making a favorable impression on the jury by his side remarks. The reprimand was not unduly severe; moreover, in his charge to the jury the trial judge told the jurors that they were to draw no inferences against the defendants as a result of the reprimand.

In Lambert v. United States, 5 Cir. 1939, 101 F.2d 960, this Court indicated that the trial judge's reprimands constituted reversible error (the conviction was reversed for insufficiency of evidence), but in that case the reprimands were numerous and severe to the point of ordering the bailiffs to take the lawyer to jail. Further, there does not appear to have been a mitigating instruction to the jury. See also Young v. United States, 1965, 120 U.S.App.D.C. 312, 346 F.2d 793. Likewise distinguishable is Moody v. United States, 5 Cir. 1967, 377 F.2d 175, 177–180, where we held that a trial court's charge to the jury constituted reversible error because it was "readily susceptible of the inference that the defendants were guilty, and the jury might have concluded that the credibility of witnesses was not its problem." Id. at 179. In the instant case it seems impossible that the reprimand prevented or even hindered a fair trial.

The seminal case of Glasser v. United States, supra, sagely instructs us:

"Perhaps the court did not attain at all times that thoroughgoing impartiality which is the ideal, but our examination of the record as a whole leads to the conclusion that the substantial rights of the petitioners were not affected. The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting. [cases cited.]"

See also Carter v. United States, 9 Cir. 1967, 373 F.2d 911, 913, in which that court stated:

"A judge must strive, as did the trial judge in this case, to maintain his composure, even when badgered by contemptuous counsel * * * [cases cited]. He is not required, however, to abdicate his power or duty to control the proceedings over which he presides * * * [cases cited]."

### (3) Courtroom Door.

■ Meritless and vacuous is the contention for reversal that during one session of the trial the judge ordered the back door locked until adjournment. Most likely, the action was taken to keep

spectators from entering or leaving while the witness was testifying. There may well have been spectators in the courtroom at the time, and there is no indication that people were kept out over the whole course of the trial. We find no secrecy of the sort condemned in Re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682.

The constitutional right to a public trial is not a limitless imperative. United States ex rel. Bruno v. Herold, 2 Cir. 1966, 368 F.2d 187, 188. Cf. Estes v. State, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. Moreover, the defendants' counsel made no objection to the trial judge's locking order. See United States v. Garland, 2 Cir. 1966, 364 F.2d 487, 489, cert. den., 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440.

### (4) Charge to the Jury.

The appellants would have us condemn the charge because of its length and magnitude. We note that the appellants' counsel did object at trial to the "magnitude of the instruction on conspiracy." See Fed.R.Crim.P. 30. Nevertheless, we find the charge to be sufficiently clear and, in fact, patterned after Hon. William C. Mathes' "Jury Instructions and Forms for Federal Criminal Cases," 27 F.R.D. 39 (1961).

Repetitious and unnecessarily long charges are confusing to a jury and can be held prejudicial. United States v. Persico, 2 Cir. 1965, 349 F.2d 6, 8 (conviction after a thirteen-hour charge reversed). But length and magnitude in a charge are not per se untenable. United States v. Crosby, 2 Cir. 1961, 294 F.2d 928, 943, cert. den., 1962, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (conviction after an eight-hour charge upheld as to the charge).

### (5) Entrapment.

The appellants argue that the use of a government informer makes for entrapment. This ipsedixitism is unsupported by authorities or by any acceptable rationale. In Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, the Supreme Court stated:

"The defense of entrapment, its meaning, purpose, and application, are problems that have sharply divided this Court on past occasions. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249; Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. Whether in the absence of a conclusive showing the defense is for the court or the jury, and whether the controlling standard looks only to the conduct of the Government, or also takes into account the predisposition of the defendant, are among the issues that have been mooted. We need not, however, concern ourselves with any of these questions here, for under any approach, petitioner's belated claim of entrapment is insubstantial, and the record fails to show any prejudice that would warrant reversal on this score.

"The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible *stratagems* involved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged." 373 U.S. at 434–435, 83 S.Ct. at 1385–1386.

See also United States v. Berry, 2 Cir. 1966, 362 F.2d 756, 758. We find no evidence of inducement; Lacaze was the offeror and Cortez was the offeree. Compare Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. It was certainly reasonable for the jury, which received a proper instruction on entrapment from the trial court, to conclude that Lacaze was ready and will-

ing without persuasion to commit the offense. See Herrera v. United States, 5 Cir. 1967, 384 F.2d 525; Accardi v. United States, 5 Cir. 1958, 257 F.2d 168. Cf. Bullock v. United States, 5 Cir. 1967, 383 F.2d 545.

### (6) Miranda and Escobedo.

The defendants, of course, argue that they were denied rights established by Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the often asserted combine in appellate cases these days. The *Miranda* decision is inapplicable to this case, which was tried in September of 1965. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. We find no violation of the *Escobedo* principles in the record.

### (7) Motion for New Trial.

The appellants advise us that the testimony of a witness they produced at a hearing on a motion for new trial proves that Lacaze, Acevedo, and Cain were in New Orleans on the morning Lacaze and Cortez allegedly made the first trip to Biloxi. The trial court accompanied its denial of the motion for new trial with the following Memoranda of Reasons:

"The defendants offered the oral testimony of a New Orleans attorney to prove that Lacaze, Acevedo, and Cain were with him on May 11, 1965, in the Criminal Court Building in New Orleans from 9:15 A.M. until 11:30 A.M. attending to legal business there for them. Lacaze told the jury at the trial the same thing so that testimony was merely cumulative. Nobody denied that they were in Room 207 at the Travel Inn on the afternoon of May 11, 1965, and that they delivered this large quantity of narcotics to a government agent pursuant to a plan arrangement for sale at an agreed price of five hundred dollars."

A trial court's denial of a motion for new trial is not subject to facile reversal. United States v. Johnson, 1946, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; Lyles v. United States, 5 Cir. 1960, 279 F.2d 358, cert. den., 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 262, cited in point in Rodriguez v. United States, 5 Cir. 1967, 373 F.2d 17, 18; Robinson v. United States, 10 Cir. 1965, 345 F.2d 1007, 1011, cert. den., 382 U.S. 839, 86 S.Ct. 87, 15 L.Ed.2d 81. We find that the court below placed this newly discovered evidence in its proper legal perspective.

### (8) Excessive Penalties.

In valediction the defendants urge that the sentences imposed upon them are severe and excessive. Ordinarily a sentence within the limits of a statute is not within our appellate ambit. Sibley v. United States, 5 Cir. 1965, 344 F.2d 103, 105, cert. den., 382 U.S. 945, 86 S.Ct. 405, 15 L.Ed.2d 354; White v. United States, 5 Cir. 1964, 330 F.2d 993, 995; Sullivan v. United States, 5 Cir. 1963, 317 F.2d 101, 102; Bell v. United States, 5 Cir. 1938, 100 F.2d 474, 477. See also Fed.R.Crim.P. 35. Exceptional circumstances can expand such orbit occasionally, Leach v. United States, 1965, 122 U.S.App.D.C. 280, 353 F.2d 451, cert. den., 1966, 383 U.S. 917, 86 S.Ct. 911, 15 L.Ed.2d 672, but these are not exceptional circumstances. The trial court received a presentence report and took into consideration the prior conviction of the appellants, the nature of the offense, and each appellant's participation therein. Moreover, the sentences were far less than the maximum allowed under Section 7237(b), quoted at footnote 2, supra. The time lock was set by the trial court. We have no warrant under the facts to tinker.

Affirmed.