Lonnie E. **JOHNSON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20851.

United States Court of Appeals Ninth Circuit.

Feb. 16, 1968.

Thomas O. Gillis (argued), San Jose, Cal., for appellant.

Ronald S. Morrow (argued), Asst. U. S. Atty., William M. Byrney, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

**DUNIWAY, Circuit Judge:**

Johnson was convicted of aiding and abetting one Lawrence in robbing four different national banks in the Los Angeles area. The robberies occurred on July 16, 18, and 22 and August 12, 1963. It was stipulated that Lawrence did rob the banks, but that no bank employee saw Johnson in any of the banks or on premises owned by any of the banks. The conviction rests solely on the testimony of two FBI agents and a Los Angeles police officer, who obtained confessions from Johnson.

Johnson was tried on July 14 and 15, 1964. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, was decided on June 22, 1964. Its holding is therefore applicable here. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 721, 86 S.Ct. 1772, 16 L.Ed.2d 882; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, was also decided on June 22, 1964. Johnson now contends that under the rule in Jackson v. Denno the trial court should have held a hearing, not in the presence of the jury, and made a decision as to whether the confessions were obtained in violation of the rule in *Escobedo*.

The question is presented in this way: The first FBI agent to take the stand was Carl Schlatter. He testified that he interviewed Johnson in October, 1963, in the presence of another agent and a Los Angeles police officer. When he was asked if he mentioned bank robberies, Johnson's counsel objected, and there was a colloquy at the bench. Counsel stated his position as follows:

" * * * three weeks ago, in the last decision rendered in the last term there was the Illinois Escobedo case, in which * * * our Supreme Court stated that when a person has been denied the right of counsel at these periods of investigation, when they take on an accusatory nature, that any statements that are the by-product of these conferences are inadmissible as evidence * * *. I am sorry, but this is my objection to this entire line of testimony, to this conference and all the

other conferences. Unless I have the opportunity out of the hearing of the jury to question Officer Schlatter and the officers of the Los Angeles Police Department and others as to all of the surrounding circumstances, statements that were made, statements that were made with the inability of Mr. Johnson to be represented at those hearings * * * "

The court interrupted, and there was a rather long discussion of *Escobedo* and *Jackson v. Denno*, and what was held in those cases, in the course of which Johnson's counsel said:

"From my reading of the Escobedo case, it prompts me to say that my objection at this time might be somewhat earlier than I should make it, because I don't exactly know what the testimony of Officer Schlatter will be as to the interviews in 1963, especially because of the remarks by Mr. Farber that there was a denial in the beginning by Mr. Johnson of any knowledge, and it was in 1964, I believe, the date that counsel suggested was April 12th, as being the first time that Mr. Johnson made some statements, confessions, or whatever it is, that Mr. Schlatter will testify to."

The court pointed out that *Escobedo* requires that the investigation shall have reached the accusatory stage, and that the accused have asked for and been denied counsel. The colloquy continued as follows:

"MR. BROWN [counsel for Johnson]: * * * I was advised by Mr. Johnson * * * that he made a request at the time that he was in the presence, I believe, of Mr. Schlatter, and I believe the officer is Officer Rafferty, to be represented by counsel, because they made statements to him about these bank robberies, and this is some time back, I believe, in September or October of last year, at that time, it is my feeling, and I believe the evidence may support, it, testimony of Officer Schlatter and Rafferty, that Mr. Johnson was no longer a suspect on the street, but Mr. Johnson was, in fact, someone

who from some source or another they were attempting to implicate with this particular crime, these particular counts or more counts, and I think that this may—now we are starting to blend into that area covered by the Escobedo case. Mr. Johnson is no longer just a suspect, he is someone at whom they are pointing an accusatory finger.

THE COURT: There is more than a question of its blending in. It is very definite, as far as the Escobedo case. The point is, did he tell you, I wanted to call an attorney and I told the officers, 'I want to call an attorney,' and they said, 'No, you can't call an attorney,' and then they went on and asked me the questions and said, 'You will not be permitted to call an attorney.'

MR. BROWN: In point 3 I stated: 'During the time the defendant was being interrogated and investigated and the investigation was being conducted, he repeatedly requested counsel, but was told that one would be assigned,' 'later'. 'This is the direct expression of my client. My Client did not tell me they went on and then told him.' 'You will not have counsel until such-and-such.' 'But he did make the request, as far as my reading of the Escobedo case, I believe that we come within it, your Honor'.

THE COURT: Perhaps you are right when you said, in your initial statement, and perhaps this might not be the time to make the objection. We will see what the testimony is, see what is testified to by the officers, and the testimony of the defendant himself."

Schlatter resumed the stand. In describing the October, 1963 meeting, which occurred at the Los Angeles Police Department, he said:

"I told him that he did not have to talk to me; that anything he said could be used against him in open court; and that he was entitled to the services of legal counsel of his own choosing.

Q. Did he ask for counsel of his own choosing?

A. No, he did not."

He then testified that he asked Johnson if he had helped Lawrence rob banks, and that Johnson denied it. He also said that Johnson said that he was a friend of Lawrence, and had once given him a ride to the vicinity of 39th and Western, in Los Angeles. (This is the location of the bank that was robbed on July 16). On cross-examination, Schlatter said that he interviewed Johnson because Los Angeles Detective Rafferty told him that Lawrence had been arrested and Johnson might be involved.

Schlatter's next conversation with Johnson was on April 12, 1964, at the same place. Detective Rafferty of the Los Angeles police was present. Schlatter made the same statement to Johnson about his rights as before, and he testified that Johnson did not ask for an attorney. Johnson at first denied complicity, but then admitted taking Lawrence to the two banks that were robbed on July 16 and 22, that he knew Lawrence robbed the banks, and that he got money from Lawrence on both occasions.

Schlatter and Rafferty escorted Johnson to the County Jail, where he was confronted by Lawrence. There, Johnson admitted driving the car in all four robberies and writing a holdup note for Lawrence, who could not write. He went into some detail as to what happened—the cars used, where he parked, etc.

Two days later, on April 14, Schlatter and FBI agent Mills again talked to Johnson, at the jail. They gave him the same warning. Johnson again admitted his participation, but denied being involved in any other robberies. On cross-examination, Schlatter said that Lawrence had implicated Johnson before Schlatter saw Johnson on April 12. FBI agent Mills was called next. He was present only at the April 14, 1964 interview. He confirmed Schlatter's testimony as to what happened. He was not asked whether Johnson requested counsel.

Johnson took the stand. Referring to the October, 1963 interview, he testified that he asked Schlatter and Rafferty for counsel but did not have counsel. He also

said that at the April 12, 1964 interview he asked to be represented by counsel, that counsel was not appointed, and that he was told "You will get one later." As. to the April 14 interview, he said "It was the same questions and answers as it was the other two previous occasions."

In rebuttal the government called Detective Rafferty, who testified about the April 12, 1964 interview, detailing admissions by Johnson.

"Q. Did he ever ask to have an attorney there at that time? That's Mr. Lawrence. Did he refuse to talk until he got an attorney?

A. I don't recall him ever saying that, refusing to talk."

Johnson's counsel did not object to any of this testimony—presumably in deference to the court's suggestion that it would be advisable to wait and see what the testimony might be. At the conclusion of the case, he renewed his motion, referring to Johnson's testimony. The court denied the motion without comment.

In its instructions, the court submitted to the jury the question as to whether the confessions were voluntary. It did not submit the question whether Johnson asked for and was denied counsel. It was never asked to do so.

■ Jackson v. Denno, supra, holds, first, that a defendant has a "constitutional right at some stage of the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness * * *." (378 U.S. at 376–377, 84 S.Ct. at 1780.) It holds, second, that "the issue of * * * [the] confession should * * * have been determined in a proceeding separate and apart from the body trying guilt or innocence." (Id. at 394, 84 S.Ct. at 1790.) Since the case was enunciating federal constitutional rights, we can hardly hold that its rule does not apply to federal courts. The government does not argue otherwise. See United States v. Carignan, 1951, 342 U.S. 36, 38, 72 S.Ct. 97, 96 L.Ed. 48. Jackson v. Denno dealt with the question

of "voluntariness"—a Fourteenth Amendment due process question. Escobedo dealt with the right to counsel—a Sixth Amendment cum Fourteenth Amendment right. But we think that the Jackson v. Denno principle is equally applicable. Cf. Boles v. Stevenson, 1964, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109; Tucker v. United States, 8 Cir., 1967, 375 F.2d 363, 366, 367; People v. Schader, 1965, 62 Cal.2d 716, 44 Cal.Rptr. 193, 401 P.2d 665. It follows that the court should have held a hearing on the matter as counsel requested.

■ There remains the government's suggestion that the right was waived. It is true that both court and counsel acquiesced in the idea of first hearing the witnesses and then considering the matter. But counsel did make clear what he wanted, and there is not anywhere in the record a specific abandonment of that position. The decisions that counsel relied upon had come down only three weeks previously, and the colloquy between court and counsel shows some confusion as to their significance. Under these circumstances, we do not think that there was a waiver of a Jackson v. Denno type of hearing.

■ It does not follow from what we have said that Johnson has a right to a new trial. There is now some claim that Johnson's confessions were not voluntary, a claim not made in the trial court and having little, if any, evidentiary support in the record. In any event, that question was submitted to the jury, under instructions to which counsel voiced no objection. The court was not asked to submit the "request for counsel plus refusal" claim to the jury. Thus we think that the right to have the latter question passed upon by the jury (cf. Leonard v. United States, 9 Cir., 1960, 278 F.2d 418, 420–421; Smith v. United States, 9 Cir., 1959, 268 F.2d 416, 420–421; Quong v. United States, 9 Cir., 1940, 111 F.2d 751–757) was waived. (Rule 30 F.R.Crim.P.) We therefore follow the practice approved by the Supreme Court (Jackson v. Denno, supra; Boles v. Stevenson, supra).

The matter is remanded to the District Court with directions to afford Johnson a hearing before the court, of the type prescribed by *Jackson v. Denno,* on the questions of whether his statements were obtained in violation of the rule in *Escobedo,* as defined in Johnson v. State of New Jersey, supra, 384 U.S. at 734, 86 S.Ct. 1772, and whether they were voluntary. See also Camacho v. United States, 9 Cir., 1968, 392 F.2d 575. If the court finds that the statements were obtained in violation of the *Escobedo* rule, or that they were involuntary, it shall grant a new trial. If not, it may deny a new trial. If it denies a new trial and there is an appeal, it may be heard upon the present record, supplemented by the record of proceedings had pursuant to this order. This order is without prejudice to the right of the court to grant a new trial before holding the hearing here ordered, if in its discretion it shall decide to do so.

Remanded.