**UNITED STATES of America ex rel. Edward BENNETT No. H-6720, Appellant,**

**v.**

**Alfred T. RUNDLE, Warden of Eastern Correctional Institute, Graterford, Pa.**

**No. 17407.**

United States Court of Appeals Third Circuit.

Reargued Nov. 5, 1969.

Decided Dec. 5, 1969.

Rehearing Denied Jan. 14, 1970.

Kalodner and Aldisert, Circuit Judges, and Hastie, Chief Judge, dissented.

David Kanner, Kanner, Stein, Feinberg & Barol, Philadelphia, Pa., for appellant.

James D. Crawford, Asst. Dist. Atty., Philadelphia, Pa. (Samuel T. Swansen, Asst. Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, FREEDMAN and SEITZ, Circuit Judges.

Reargued before HASTIE, Chief Judge, and KALODNER, FREEDMAN, SEITZ, ALDISERT, STAHL and ADAMS, Circuit Judges.

OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Relator was found guilty in a Pennsylvania court of second degree murder, aggravated robbery and conspiracy and was sentenced to imprisonment for consecutive terms aggregating not less than 21 nor more than 42 years. The District Court denied his petition for habeas corpus, and his appeal, on which we granted a certificate of probable cause, is now before us.

 It is clear that relator has exhausted his state remedies. He appealed from his conviction to the Supreme Court of Pennsylvania and there made the contentions which he has presented to the District Court. The Supreme Court of Pennsylvania affirmed his conviction in a per curiam opinion, Eagen and Roberts, JJ., dissenting. Commonwealth v. Bennett, 424 Pa. 650, 227 A. 2d 823, cert. denied 389 U.S. 863, 88 S. Ct. 122, 19 L.Ed.2d 132 (1967). Since the claims now presented to us were made on direct appeal there has been an exhaustion of state remedies under 28 U.S.C. § 2254, even if relator theoretically has the right to seek collateral relief in the state courts on the same contentions. See Brown v. Allen, 344 U.S. 443, 447, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Fletcher v. Maroney, 413 F.2d 16 (3 Cir. 1969); United States ex rel. Howard v. Russell, 405 F.2d 169, 171 (3 Cir. 1969). In fact, however, under Pennsylvania's Post-Conviction Hearing Act relator is not eligible for collateral relief because the State Supreme Court already has ruled on the issues presented.[1] The

---

1. The Post-Conviction Hearing Act provides that a petitioner must prove "that the error resulting in his conviction and

sentence has not been finally litigated or waived." Act of January 25, 1966, P.L. (1965) 1580, § 3(d), 19 Purdon's Pa.Stat.

District Court therefore was correct in reaching the merits of the petition.

Relator makes three claims:

(1) His trial was barred by a Pennsylvania statute which requires that an imprisoned defendant who requests the final disposition of an outstanding indictment must be tried within 180 days;

(2) His confession should not have been introduced into evidence because it was involuntary and was obtained in violation of his right to counsel; and

(3) His right to a public trial was violated by the trial judge's exclusion of all persons other than relator, the lawyers, the witnesses and court officers from the portion of the trial at which a Jackson v. Denno [2] hearing was held.

### I.

Relator's contention that his state trial was held too late is founded on the Act of June 28, 1957, P.L. 428,[3] providing for the disposition of detainers lodged against prisoners. The statute provides that whenever an untried indictment is pending in the Commonwealth against a person imprisoned in a correctional institution of Pennsylvania, "he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the District Attorney of the County in which the indictment is pending and the appropriate court written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *. The request of the prisoner shall be accompanied by a certificate of the warden * * * or other official having custody of the prisoner," giving the terms of his commitment, the time served and to

be served and certain other relevant facts.[4] The prisoner's demand for trial "shall be given or sent by the prisoner to the warden * * * or other official having custody of him, who shall promptly forward it (together with the certificate) to the appropriate District Attorney and the court * * *."[5] The Act then provides: "In the event that the action is not brought to trial within the period of time as herein provided, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."[6]

■ Relator delivered his request for trial to the prison authorities on Friday, March 26, 1965. It was forwarded and delivered to the District Attorney on Monday, March 29, 1965.[7] Relator's trial began on September 23, 1965, which was 181 days after he delivered his request to the prison authorities but 178 days from the time it was delivered to the District Attorney. The state trial court held that the 180 day period was to be computed from the date of the delivery of the notice to the District Attorney. The Pennsylvania Supreme Court's per curiam affirmance implicitly approved this conclusion. Relator's claim on this interesting question of statutory construction amounts to no more than a disagreement with the state courts' resolution of a state law problem. It does not present a federal question, for there is no claim that relator is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). We therefore would not have authority to grant relief even

---

Annot. § 1180–3. An issue is finally litigated "if the Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue." § 4(a) (3), 19 Purdon's Pa.Stat.Annot. § 1180–4.

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

3. 19 Purdon's Pa.Stat.Annot. § 881, et seq.

4. § 1(a), 19 Purdon's Pa.Stat.Annot. § 881.

5. § 1(b), 19 Purdon's Pa.Stat.Annot. § 881.

6. § 2, 19 Purdon's Pa.Stat.Annot. § 882.

7. The parties apparently have assumed similar delivery of the request to the court.

if we disagreed with the state courts' construction of the statute.

Relator belatedly seeks to place a federal cast on his claim by asserting on appeal that the failure to try him within 180 days from the delivery of his notice to the warden amounted to a denial of his right to a "speedy trial" guaranteed him by the Sixth Amendment as incorporated into the Fourteenth Amendment. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). However, Pennsylvania's statute providing for a 180 day period does not create a constitutional rule of thumb which measures the time boundary for a "speedy trial." In the first place, the statute itself contains a provision that for good cause the court may grant any necessary or reasonable continuance,[8] and this, of course, would extend the 180 day period. Moreover, the 180 day period does not even begin to run until a prisoner elects to make the statutory request. In any event, whether the constitutional right to a speedy trial on an outstanding indictment has been violated depends on all the facts and circumstances of the individual case.[9] It cannot be said, therefore, that the state courts' construction of the statute is so unreasonable that a federal court should interpose a contrary interpretation in order to enforce the speedy trial guarantee of the Sixth Amendment.

## II.

Relator claims that the exclusion of all persons other than himself, the attorneys, the witnesses and court officials during the Jackson v. Denno hearing on his motion to suppress his confession denied him the right under the Sixth Amendment to a "public trial." [10]

At the outset it must be acknowledged that in Gaines v. Washington, 277 U.S. 81, 48 S.Ct. 468, 72 L.Ed. 793 (1928), the Supreme Court held that the public trial provision of the Sixth Amendment did not apply to state proceedings, although it did not decide the extent to which the due process provision of the Fourteenth Amendment would affect a demand for public trial in the state courts. Gaines has never been overruled explicitly,[11] but it is now clear that the provision is applicable to the states by virtue of the due process clause of the Fourteenth Amendment.[12] Indeed, the Supreme Court has recently held the companion "speedy trial" provision of the Sixth Amendment applicable to the states by incorporation into the Fourteenth Amendment.[13]

8. § 1(a), 19 Purdon's Pa.Stat.Annot. § 881.

9. United States v. Ewell, 383 U.S. 116, 120–121, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Hedgepeth v. United States, 125 U.S.App.D.C. 19, 365 F.2d 952, 954–955 (1966); United States v. Simmons, 338 F.2d 804, 806–808 (2 Cir. 1964), cert. denied 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965); United States ex rel. Lowry v. Case, 283 F.Supp. 744, 745–746 (E.D.Pa.1968).

10. The Sixth Amendment provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial * * *."

11. Cf. Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

12. See Estes v. Texas, 381 U.S. 532, 559–560 (Warren, C. J., concurring), 588, 85 S.Ct. 1628, 14 L.Ed.2d 543 (Harlan, J., concurring) (1965); Duncan v. Louisiana, 391 U.S. 145, 148, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Both of these recent Supreme Court decisions cite In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), which although not deciding that the "public trial" clause is incorporated into the Fourteenth Amendment emphasizes that the right to a public trial is a fundamental concept in Anglo-American criminal justice. Ibid. at 266–271, 68 S.Ct. 499; United States ex rel. Bruno v. Herold, 408 F.2d 125, 132–133 (2 Cir. 1969) (Waterman, J., dissenting); Lewis v. Peyton, 352 F.2d 791 (4 Cir. 1965). See also Commonwealth ex rel. Paylor v. Cavell, 185 Pa.Super. 176, 181, 138 A.2d 246, 248, cert. denied 358 U.S. 854, 79 S.Ct. 84, 3 L.Ed.2d 88 (1958).

13. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

■ Holding as we do that the public trial requirement of the Sixth Amendment is applicable in state criminal proceedings, a number of problems must be considered. The first is whether, regardless of the merits, relator waived his right to claim the constitutional protection. The second is whether the Jackson v. Denno hearing falls within the constitutional guarantee as part of a criminal "trial." The third is whether the right to a public trial is violated where the exclusion of the public is the result of an effort to prevent the prejudice to a defendant which would result from public knowledge of the existence of his confession before it has been determined to be legally admissible against him. The fourth is whether a defendant must show specific prejudice resulting from the denial of a public trial.

1. We turn first to the question of waiver. Here it is necessary to review the state court proceedings which dealt with relator's motion to suppress his confession.

Relator's case originally was listed for trial on September 17, 1965, but when he filed a motion to suppress the confession, the trial was postponed pending a decision on the motion. On September 22, 1965, a pre-trial hearing was held on the motion to suppress. After testimony had been presented and the judge announced that he would take the motion under advisement, relator withdrew the motion against the advice of counsel because relator feared that otherwise the trial would be postponed pending decision on the motion and this might constitute a waiver of his claim under the "180 day rule."

On the next day, September 23, 1965, the case was called for trial before another judge. After selection of the jury was completed on October 1, the trial judge, apparently after discussion, permitted relator to renew the motion to suppress despite its withdrawal on September 22. The jury was sent out and the courtroom was cleared so that the only persons present were the relator, his counsel, the Assistant District Attorney, the witnesses and the court officers. At the proceeding on September 22, the Assistant District Attorney had called the attention of the hearing judge to the newly adopted Rules 323 and 324 of the Pennsylvania Rules of Criminal Procedure, 19 P.S.Appendix which had become effective one week before and which required that the courtroom be cleared. Although the hearing judge expressed doubt regarding the constitutionality of the rules, he noted that no spectators were present and apparently issued no exclusionary order. Relator's counsel said nothing regarding this problem at that time. Before the trial judge, however, when the courtroom was cleared, relator's counsel addressed the court as follows: "Counsel for the defendant * * * sees the possibility that at some time the question may be raised that this was a denial of the defendant's right to a public hearing at every stage of the proceedings, and this is an important stage of the proceedings, and we wish the record to note that we are not waiving such right if it should be found at a later date that such a right does exist. * * * We feel there is a possibility that the rule itself may be construed at some time in the future to be a denial of the defendant's right to a public hearing."

■ Although this statement was made in terms of understandable dubiety regarding the ultimate constitutional decision, it clearly served as an objection to the action. It certainly did not constitute acquiescence in the exclusion of the public.[14] Here there was not

14. Cf. Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) ; United States ex rel. Bruno v. Herold, 408 F.2d 125, 128–129 (2 Cir. 1969) ; United States v. Sorrentino, 175 F.2d 721, 723 (3 Cir.), cert. denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949) ; Commonwealth ex rel. Paylor v. Cavell, 185 Pa.Super. 176, 180, 185, 138 A.2d 246, 248, 250, cert. denied 358 U.S. 854, 79 S.Ct. 84, 3 L.Ed.2d 88 (1958).

only no acquiescence in the exclusion of the public but an objection—however it was phrased—to the court's action. We hold, therefore, that relator did not waive his right to a public trial.

2. This brings us to the question whether the Jackson v. Denno hearing is so much a part of the "trial" that it is subject to the Sixth Amendment's "public" requirement.

A Jackson v. Denno hearing is in a sense preliminary to a trial. It results either in the suppression of a confession or in a determination that it may be considered by the jury at the trial. The hearing is often held some time prior to the trial itself and even before a judge other than the trial judge. The defendant's testimony at the hearing may not be used against him if he does not take the stand at the trial.[15] All these elements tend to separate the Jackson v. Denno hearing from the trial itself.

On the other hand, the Jackson v. Denno hearing differs strongly from those incidental or collateral discussions outside the presence of the jury which occur during a trial, at which it has been held the public may be excluded, such as a discussion regarding the appointment of counsel for an indigent defendant,[16] or a side-bar conference regarding a question of law[17] or motions for severance and bail,[18] or conferences in chambers on other matters not properly for the jury.[19]

A Jackson v. Denno hearing has more of the characteristics of a testimonial hearing, which is the essence of a trial proceeding, than does the selection of a jury, which we held in United States v. Kobli, 172 F.2d 919 (3 Cir. 1949) to be part of a public trial. A Jackson v. Denno hearing is a testimonial inquiry at which witnesses are sworn and testify, subject to cross-examination. Strong pressures are naturally at work on the prosecution's witnesses to justify the propriety of their conduct in obtaining the confession and on the defendant to have it excluded from his trial. Such a hearing, with conflicting credibility in issue and factual findings of the judge the ultimate outcome, is in every respect equivalent to a trial proceeding except that the jury necessarily is excluded from it,[20] since its purpose is to have the judge determine whether the confession should be permitted to go to the jury. Whether a Jackson v. Denno hearing held after the selection of the jury, as in this case, is part of the "trial" and within the Sixth Amendment ultimately turns on whether the purposes and policy underlying the requirement of a public trial apply to such a proceeding.

The right to a public trial is deeply rooted in history. Pennsylvania, where relator's trial occurred, was the first state to guarantee a public trial in its Constitution, adopted in 1776.[21] But the principle long antedated the first Pennsylvania Constitution. This history is briefly sketched in Commonwealth ex rel. Paylor v. Cavell, 185 Pa. Super. 176, 181–186, 138 A.2d 246, 248–250, cert. denied 358 U.S. 854, 79 S.Ct. 84, 3 L.Ed.2d 88 (1958). William Penn's Code of Laws of 1682 in the Frame of Government included a pro-

15. See Pennsylvania Rules of Criminal Procedure 323(d) and 324(d) quoted infra, pp. 11 and 12; Cf. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

16. Hayes v. United States, 296 F.2d 657, 668 (8 Cir. 1961).

17. Steiner v. United States, 134 F.2d 931, 935 (5 Cir.), cert. denied 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721 (1943).

18. State v. Jackson, 43 N.J. 148, 203 A.2d 1, 11 A.L.R.3d 841 (1964), cert. denied Ravenell v. New Jersey, 379 U.S. 982, 85 S.Ct. 690, 13 L.Ed.2d 572 (1965).

19. See People v. Teitelbaum, 163 Cal.App. 2d 184, 329 P.2d 157, 171–172 (1958).

20. Cf. Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967).

21. Pennsylvania Constitution, Declaration of Rights IX (1776), reprinted in 5 Thorpe, American Charters, Constitutions and Organic Laws, pp. 3081, 3083 (1909).

vision that "all courts shall be open. * * * " [22] The present Pennsylvania Constitution of 1874 provides in Article I, § 9: "In all criminal prosecutions [by indictment or information] the accused hath a right ·to * * * a * * * speedy public trial * * *." Mr. Justice Black's statement in In re Oliver, 333 U.S. 257, 268–269, 68 S.Ct. 499, 505, 92 L.Ed. 682 (1948), of the evils which gave rise to the requirement of public trials has been frequently quoted: "The traditional Anglo-American distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the *lettre de cachet*. All of these institutions obviously symbolized a menace to liberty."

 A few of the basic elements in policy underlying the guarantee of a public trial affect the question before us. The searchlight of a trial which is open to the public serves as a restraint against the abuse of judicial power and also against possible perjury by witnesses who know that their testimony is exposed to public knowledge.[23] Another element is that a public trial may lead, even accidentally, to the appearance of an important witness who, having heard the testimony, may come forward with relevant new evidence which may help the defendant.[24]

 The policy aspects of the constitutional guarantee have significant application in the unique situation presented by a Jackson v. Denno hearing. It is especially important to have public knowledge of claims of police coercion or disregard of the constitutional right to silence and to the assistance of counsel. It is equally important that the testimony of police officers regarding police conduct which usually occurs more or less in private within an environment which the police themselves create and in which they reign, should not be given in secret. Thus the desirability of the public exposure of the claims and denials of coerced confessions, the policy that judicial proceedings be under the scrutiny of the general public in order to avoid judicial oppression and to discourage perjury, and the provision for the possibility that one who has valuable information might stray into the courtroom as a spectator and hear the proceeding, all are as relevant to a Jackson v. Denno hearing as to a full trial. From this conclusion it follows that such a hearing falls within the constitutional requirement that in criminal prosecutions all trials should be public.

 Here the suppression hearing took place after the jury was empanelled and sent out of the courtroom. It was no less a trial than it would have been if it had taken place in the presence of the jury, as might have been constitutionally permissible.[25] We hold, therefore, that a hearing which, as here, is held as part of the trial and after the jury has been sequestered, falls within the constitutional guarantee and must be conducted as a public trial.

3. The order excluding the public was made pursuant to Rules 323 and

22. Reprinted, 5 Thorpe, op. cit. pp. 3047, 3061.

23. See In re Oliver, 333 U.S. at 270, n. 24, 68 S.Ct. 499; People v. Jelke, 308 N.Y. 56, 62, 123 N.E.2d 769, 772, 48 A.L.R.2d 1425 (1954); 6 Wigmore, Evidence, § 1834, p. 333 (3d ed. 1940).

24. See generally Annot. 26 A.L.R.2d 762. "It is entirely possible that the apparently idle spectator may prove to be an unknown witness vital to the defense of the accused." United States v. Kobli, 172 F.2d 919, 923 (3 Cir. 1949); Tank-sley v. United States, 145 F.2d 58, 59, 10 Alaska 443, 156 A.L.R. 257 (9 Cir. 1944). 6 Wigmore, Evidence, § 1834, p. 333 (3d Ed. 1940).

25. The Supreme Court has held in Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), that it is permissible to hold a Jackson v. Denno hearing in the presence of the jury although at the risk that the trial will be aborted to avoid prejudice to the defendant in the event the trial judge concludes that the confession must be excluded.

324 of the Pennsylvania Rules of Criminal Procedure which became effective on September 15, 1965, a week before the trial began.[26] Rule 323, adopted to implement the decision in Jackson v. Denno,[27] applies to a hearing on an application for the suppression of a confession on the ground that it was involuntary, and Rule 324, adopted to implement the decision in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964),[28] applies to such applications which claim a denial of the assistance of counsel.

The relevant language of both rules at the time of trial was identical:

"(c) When application for relief is made, a judge of the court shall:

"(1) Fix a time for hearing which may be either prior to or at trial * * *.

* * * * * *

"(3) Hold a hearing in the presence of only the defendant, counsel for the parties, court officers and necessary witnesses * * *.

* * * * * *

"(5) Enter an order impounding the record and prohibiting the disclosure of the nature and purpose of the hearing or the judge's order to anyone except the court, the defendant and counsel for the parties * * *.

"(d) The defendant may testify at the hearing concerning the confession. If he does so testify, he does not thereby waive his right to remain silent during the trial."

The rule is framed in language apparently mandatory, requiring that the court exclude everyone but the defendant, the attorneys, court officers and necessary witnesses in all suppression hearings. In the present case, the hearing was held at the trial under the alternative permitted under subdivision (c) (1). The jury was selected and sequestered before the hearing began. We therefore need not consider the validity of the rules in other circumstances such as where a Jackson v. Denno hearing is held in advance of the trial. The evident purpose of the rule requiring the exclusion of the public from the hearing is to protect the defendant at the trial from the prejudice which might follow from public knowledge of the existence of a confession which has been ruled inadmissible. There is a significant difference in the risk of prejudice involved in those cases where at the time of the hearing the case has not yet been called for trial and those where the case has been called for trial and a jury selected. In the latter case, the jury can be insulated from learning of the existence of a confession which is held inadmissible. This can readily be accomplished by sequestration of the jury without depriving a defendant of his right to a public trial on the claim that his protection requires this despite his objection to it.

It has always been recognized that any claim of practical justification for a departure from the constitutional requirement of a public trial must be tested by a standard of strict and inescapable necessity. For example, in *Kobli,* we held that a defendant was deprived of his constitutional right to a public trial because the court, in a prosecution for violation of the Mann Act involving an 18-year old girl, cleared the courtroom of everyone except the defendants, their counsel, witnesses and the press. We held that the court could have excluded youthful spectators for the protection of public morals, but that its sweeping exclusion of the public in general was improper.

In the present case, there was no need to exclude the public after the jury had retired from the courtroom. In these circumstances, the exclusion order entered under Rules 323 and 324

---

26. The rules were adopted March 15, 1965, effective September 15, 1965, 417 Pa. xxvii, et seq.

27. Comment of the Criminal Procedural Rules Committee, 417 Pa. xxxii.

28. Comment of the Criminal Procedural Rules Committee, 417 Pa. xxxv.

cannot be justified by any necessity to protect the defendant and therefore infringed relator's constitutional right to a public trial.

The Superior Court of Pennsylvania, construing Rule 323 in Commonwealth v. Howard, 212 Pa.Super. 100, 239 A.2d 829 (1968), allocatur refused, 212 Pa. Super. xxxv, held that it did not amount to a mandatory requirement that the courtroom be cleared where the Jackson v. Denno hearing was held after a jury was selected and sent from the courtroom. There, in a converse factual situation, the defendant claimed on a direct appeal from his conviction that the rule had been violated because the Jackson v. Denno hearing was held without clearing the courtroom of about 15 spectators who were present. The Superior Court disagreed, saying: "We do not interpret Rule 323 as a directive to conduct 'Jackson' hearings behind doors closed to the general public, particularly in light of (c) (1) of that rule which provides that the court may fix such hearings 'at trial.' Admittedly such hearings are to be conducted out of the hearing of a jury, and with caution in preventing prejudice to a defendant from what might be said there. However, we cannot find any prejudice to this appellant by the presence of such spectators at this mid-trial hearing that would warrant the grant of a new trial." [29]

■ 4. The record does not show whether any spectators in the courtroom were in fact removed from it by the exclusionary order. Nor, of course, does it reveal whether any persons sought admittance to the courtroom after the exclusionary order was made. But a defendant who invokes the constitutional guarantee of a public trial need not prove actual prejudice. Such a requirement would in most cases deprive him of the guarantee, for it would be difficult to envisage a case in which he would have evidence available of specific injury. Indeed, the barring of spectators would make it impossible for the unknown individual to stray into the courtroom and reveal his information bearing on the case. To require proof of this by the defendant would be ironically to enforce against him the necessity to prove what the disregard of his constitutional right has made it impossible for him to learn. In any event, we made it clear in *Kobli* that we follow the rule that a defendant need not prove prejudice,[30] and we adhere to it.

### III.

Our holding that relator's right to a public trial was violated requires the issuance of a writ of habeas corpus unless the Commonwealth proceeds to afford him a new Jackson v. Denno hearing. This was the procedure which the Supreme Court followed in Jackson v. Denno itself; it remanded the case to the District Court "to allow the State a reasonable time to afford Jackson a hearing or a new trial, failing which Jackson is entitled to his release." [31]

"(f) The hearing, either before or at trial, shall be held, upon the request of the defendant or his attorney or by the judge on his own motion, in the presence of only the defendant, counsel for the parties, court officers and necessary witnesses. In any event, the hearing shall be held outside the hearing and presence of the jury."

29. 212 Pa.Super. at 105, 239 A.2d at 831. Rule 323, but not Rule 324, was amended on November 25, 1968, effective February 3, 1969, Appendix 19 Purdon's Pa.Stat. Annot. Rule 323 (Supp.). The comment of the Criminal Procedural Rules Committee states that the amendment was a "clarification" made in response to the decision in *Howard* and that under it the hearing may be held either before or at trial, "but need only be held *in camera* if the defendant or his attorney requests or if the judge orders it on his own * * *. In all cases, the jury shall not be present at the hearing."

The relevant provision of the rule, as amended, reads:

30. 172 F.2d at 921; Tanksley v. United States, 145 F.2d 58, 59, 10 Alaska 443, 156 A.L.R. 257 (9 Cir. 1944) ; Note, The Right to a Public Trial in Criminal Cases, 41 N.Y.U.L.Rev. 1138, 1149–50 (1966).

31. 378 U.S. 395–396, 84 S.Ct. 1791.

Of course, if on the new Jackson v. Denno hearing the Pennsylvania courts should hold that the confession was not admissible in evidence, it would follow that relator would be entitled to a new trial. If, on the other hand, they should hold that the confession was admissible they might still consider the necessity of granting a new trial, especially if there is any substantial difference between the evidence presented at the new hearing and that which had been submitted to the jury at trial.

In these circumstances we do not decide relator's claim that the District Court erred in holding that his confession was admissible. The record developed in the new hearing will be the appropriate basis for any future determination of the admissibility of the confession and the necessity, if any, of the granting of a new trial.

The judgment of the District Court, therefore, will be vacated with direction to order the issuance of a writ of habeas corpus unless within a period fixed by the District Court further proceedings are taken in the state court in accordance with this opinion.

STAHL, Circuit Judge (concurring).

I am in full agreement with the opinion of Judge Freedman in this case. However, I believe it is important to note another reason for concluding that a Jackson v. Denno hearing, whether held before or after the selection of a jury, is part of a public trial.

Where a Jackson v. Denno hearing is held, it is the only stage of the criminal proceeding in which the voluntariness of a confession may be *constitutionally* determined.[1] The demands of due process are fully met when the trial judge initially and independently passes on the voluntariness of a confession regardless of the jury's power in Pennsylvania to reconsider the issue in the trial proper.

Prior to the decision in Jackson v. Denno, most Pennsylvania courts and the courts of other states, as well as those of this circuit, 378 U.S. at 421, 84 S.Ct. 1774, followed the New York rule. Under this rule the trial judge simply decided whether there was sufficient evidence of coercion for the issue of voluntariness to go to the jury, and the jury alone then decided whether a confession was voluntary. Since Jackson v. Denno, Pennsylvania has adopted the Massachusetts rule where the issue of voluntariness is submitted to the jury, under proper instructions, if the trial judge has found the confession to be voluntary. Commonwealth v. Schmidt, 423 Pa. 432, 224 A.2d 625 (1966); Commonwealth v. Howard, 212 Pa.Super. 100, 239 A.2d 829 (1968).

In Jackson v. Denno, while approving the Massachusetts rule procedure, *i. e.*, where both the judge and jury pass on voluntariness, the Court also approved the Orthodox rule, then followed in about twenty states, 378 U.S. at 411–412, 84 S.Ct. 1774 under which the trial judge *alone* finally decides the issue of voluntariness before the confession is admitted into evidence, and the question of voluntariness is not submitted to the jury at all. 378 U.S. at 378–379, 84 S.Ct. 1774. This indicates that it is the judge's determination of voluntariness,

---

1. In Marion v. Beto, 302 F.Supp. 913, 917 (N.D.Tex.1969), the court said:

Essentially, all that is constitutionally required is that the trial Court make an independent determination of voluntariness before submitting the confession to the jury for consideration. There appears to be no constitutional requirement in Jackson v. Denno for a further submission to the jury.

The Second Circuit, In United States v. Anderson, 394 F.2d 743, 747 (1968), stated:

The trial court held a hearing in the absence of the jury, screened the statements and made the critical determination that the admissions were voluntarily made. Defendant contends that the judge should have taken the second step by following the Massachusetts procedure of submitting the voluntariness issue to the jury. We find no constitutional requirement in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), for a further submission to the jury. * * *

and not that of the jury, which meets the crucial test of whether due process has been afforded. In his dissenting and concurring opinion in *Jackson*, Justice Black recognized that this is the effect of the majority opinion:

[T]he Constitution now requires the judge to make this finding, and the jury's power to pass on voluntariness is a mere matter of grace, *not something constitutionally required.* (Emphasis added.) 378 U.S. at 404, 84 S.Ct. at 1795.

Thus, even where the Massachusetts rule is followed, Jackson v. Denno teaches that due process is satisfied by the trial judge's initial, independent determination of voluntariness. 378 U.S. at 378 n. 8, 84 S.Ct. 1774. In *Jackson*, where the Court held the New York rule procedure constitutionally deficient, the case was remanded to the New York courts only for the purpose of holding an evidentiary hearing by a judge on the issue of voluntariness. In this regard, the Court said:

But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, *we see no constitutional necessity at that point for proceeding with a new trial,* for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession; but if it did, *there is no constitutional prejudice* to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. 378 U.S. at 394, 84 S.Ct. at 1790. (Emphasis added.)

The sole reliance on the trial judge's determination of voluntariness to comply with the requirements of the Constitution follows from the Supreme Court's expressed awareness that limiting instructions directing a jury to disregard certain kinds of evidence (such as coerced confessions or accomplices' confessions received without benefit of confrontation) are wholly ineffective in removing the prejudicial impact of improperly received evidence. See Jackson v. Denno and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, the Court stated that *Jackson* "expressly rejected the proposition that a jury, when determining the confessor's guilt, could be relied upon to ignore his confession of guilt should it find the confession involuntary." *Id.* at 129, 88 S.Ct. at 1624.

It appears, therefore, that in *Jackson* the Court replaced the questionable safeguard of limiting instructions with the requirement of an independent determination of voluntariness by the trial judge as the standard for deciding whether due process has been met in coerced confession cases. Consequently, in jurisdictions such as Pennsylvania which adhere to the Massachusetts rule, the Jackson v. Denno hearing, being the only constitutional requisite for determining voluntariness, is considerably more important than the later proceedings before the jury on the same issue.

In view of the foregoing, I believe it is quite clear that the Jackson v. Denno hearing is an integral part of defendant's overall trial where the voluntariness of a confession is in issue. As such, it falls within the public trial guarantee of the Sixth Amendment.

The fact that the Jackson v. Denno hearing is separate and apart from the trial before the jury is not significant as it is part of the entire judicial proceeding involving the determination of the defendant's innocence or guilt. The public trial guarantee of the Sixth Amendment was established at a time when there was obviously no separate Jackson v. Denno hearing on voluntariness. In his concurring opinion in Estes v. Texas, 381 U.S. 532, 564, 85 S.Ct.

1628, 1643, 14 L.Ed.2d 543 (1965),[2] Chief Justice Warren said:

> For the Constitution to have vitality, this Court must be able to apply its principles to situations that may not have been foreseen at the time those principles were adopted. * * *
>
> * * * "In the application of a constitution, therefore, our contemplation cannot be only of what has been, but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality." * * *

In deciding this case we must mold present criminal procedures into the established constitutional labels. In so doing the Jackson v. Denno hearing fits squarely within the concept of a public trial.

KALODNER, Circuit Judge (dissenting):

I disagree with the majority's holding that the "relator's right to a public trial was violated" when the public was excluded during the Jackson v. Denno hearing on the relator's motion to suppress his confession which was presented after his jury trial commenced.

The short answer to the stated holding is that the relator was accorded a full "public trial" on the issues presented by his motion to suppress his confession after it was denied by the state trial judge at the conclusion of the Jackson v. Denno hearing, and the jury trial was resumed upon the relator's murder, aggravated robbery and conspiracy indictments.

At that time, the Commonwealth introduced into evidence the relator's confession and presented testimony as to the circumstances prevailing at the time it was obtained. The relator chose not to take the stand and did not offer any rebuttal testimony on the score stated. The state record discloses that the trial judge painstakingly and fully instructed the jury in his charge that it was its duty to find whether the confession was truthful, and that it was to disregard it if it found it to have been involuntarily obtained even though it found it to be truthful.

Relator does not here challenge the trial judge's charge in the respects stated, nor has he ever done so either in the various state proceedings or in the District Court.

Standing alone, the single factor that the relator was accorded a "public" trial on the issues presented by his motion to suppress his confession when they were presented to the jury, is fully dispositive of his contention that he was denied a "public" trial.

However, since the majority's holding that a Jackson v. Denno hearing, conducted after a trial has begun, is a "part of the trial * * * and falls within the constitutional guarantee and must be conducted as a public trial," sets a precedent, this must be said with respect to that holding:

Jackson v. Denno held that a defendant's constitutional rights are violated when his challenged confession is introduced into evidence at his jury trial without prior judicial determination of voluntariness "in a proceeding separate and apart from the body trying guilt or innocence," and that a confession found to be involuntary in such a proceeding is not to be submitted to the jury trying

---

2. Estes v. Texas dealt in part with a two-day "pre-trial" hearing, broadly televised and broadcast, which was held to determine whether live television and radio coverage should be permitted at the trial proper. The Court held that this preliminary hearing was an integral part of the overall proceeding in determining whether the distractions of live coverage prevented the defendant from receiving a fair trial. 381 U.S. at 536, 537, 85 S. Ct. 1628.

the defendant. 378 U.S. 368, 394, 395, 84 S.Ct. 1774, 1790.

While the vitality of what was said in Jackson v. Denno, with respect to prior determination of voluntariness "in a proceeding separate and apart from the body trying guilt or innocence", seems to have been impaired by the statement in Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967) that "This Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances", the Court in *Pierce immediately thereafter* said that " * * because a disputed confession may be found involuntary and inadmissible by the judge, it would seem prudent to hold voluntariness hearings outside the presence of the jury." 389 U.S. 32, 88 S.Ct. 193.

In Johnson v. United States, 390 F.2d 517 (9 Cir. 1968), where the Court held that a defendant was denied his right to a Jackson v. Denno hearing on the question of the voluntariness of his confession, the Court construed the *Jackson*, decision as requiring that such a hearing be "determined in a proceeding separate and apart from the body trying guilt or innocence."

In doing so the Court said (p. 520):

"Jackson v. Denno, supra, holds, first, that a defendant has a 'constitutional right at some stage of the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness * * *.' (378 U.S. at 376–377, 84 S.Ct. at 1780.) It holds, second, that 'the issue of * * * [the] confession should * * * have been determined *in a proceeding separate and apart from the body trying guilt or innocence.*' (Id. at 394, 84 S.Ct. at 1790)." (emphasis supplied).

Neither the Jackson v. Denno decision nor its progeny afford any basis for the majority's holding that a Jackson v. Denno hearing, when it takes place after a defendant's criminal trial is under way, "is so much a part of the 'trial' that it is subject to the Sixth Amendment's 'public' requirement."

Nor can the majority's stated holding be reconciled with its statements conceding that "A Jackson v. Denno hearing is in a sense *preliminary* to a trial", and the "elements" of such a hearing " * * tend to *separate* the Jackson v. Denno hearing from *the trial itself.*" (emphasis supplied).

The majority's rigid application of the "public" trial requirement of the Sixth Amendment is at odds with the decided cases in the general field which have not regarded it as inflexible and immutable as the laws of the Medes and Persians "which altereth not." [1]

On the latter score, it was only recently said of the requirement:

"The constitutional right to a public trial *is not a limitless imperative.*" Lacaze v. United States, 391 F.2d 516, 521 (5 Cir. 1968). (emphasis supplied). There, the judge had ordered the courtroom doors locked during one session of the trial, and there was no indication that the public had been barred "during the whole course of the trial." In denying the defendant's contention that he had been deprived of his constitutional right to a "public" trial, the court described it as "meritless and vacuous."

Again, it has been held that the Sixth Amendment right to a "public" trial "is subject to the power of the judge to *preserve the fairness * * * of a trial.*"

In United States ex rel. Bruno v. Herold, 368 F.2d 187 (2 Cir. 1966), it was held (p. 188):

"The constitutional right to a public trial *is subject to the power of the judge to preserve the fairness and orderliness of the proceedings* of the court. United States ex rel. Orlando v. Fay, 350 F.2d 967 (2 Cir. 1965)." (emphasis supplied).

1. Daniel, 6:8.

There, the action of the state trial judge in clearing the courtroom to avoid possible intimidation of witnesses was held to be "well within his discretion" and his power to preserve fairness and orderliness of the trial.

Here, the state judge acted well within the permissible scope of his inherent judicial discretion "to preserve the fairness" of the relator's trial on his murder, robbery and conspiracy indictments, as well as within the authority of Pennsylvania Rule 323, when he accorded the relator a non-public hearing "separate and apart from the body trying his guilt or innocence" on relator's motion to suppress his confession.

Jackson v. Denno lays down a "fairness" doctrine with respect to confessions. It announces "A constitutional rule * * * that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given", Sims v. Georgia, 385 U.S. 538, 543–544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967), "in a proceeding separate and apart from the body trying guilt or innocence." Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 1790.

In declared implementation of Jackson v. Denno, Pennsylvania has adopted a public policy of "fairness" which excludes all but "the defendant, counsel for the parties, court officers and necessary witnesses" from a Jackson v. Denno hearing. That public policy is given effect in Rule 323 of the Pennsylvania Criminal Procedural Rules, set forth in the margin.[2] In excluding the general public from such a hearing, Pennsylvania goes one step further than the *Jackson* decision in apparent desire to further protect a defendant's interests.

It has long been settled that a state "is free to regulate the procedure [3] of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

Here, it cannot reasonably be said that Rule 232 of the Pennsylvania Criminal Procedural Rules "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental", particularly in the light of the teaching of Jackson v. Denno and its progeny.

This, too, must be said:

The majority has extracted an episode in isolation, viz., exclusion of the public during the *Jackson-Denno* hearing, as the premise of its holding that relator was denied a "public" trial. An appeal from a criminal conviction should not be turned into a safari for error which would defeat the ends of justice. Judicial enforcement of constitutional due

2. The Pennsylvania Criminal Procedural Rules were promulgated by the Superior Court of Pennsylvania on March 15, 1965, as authorized by the Pennsylvania Act of July 11, 1957, P.L. 819. The Rules are reported at 417 Pa. XXIX et seq. Rule 323 is reported at 417 Pa. XXXI–XXXII. The Rules became effective September 15, 1965.
 Rule 323 provides in relevant part:
 "(c) When application for relief is made, a judge of the court shall:
 "(1) Fix a time for hearing which may be either prior to or at trial * * *.
 "(3) Hold a hearing in the presence of only the defendant, counsel for the parties, court officers and necessary witnesses for the purpose of determining, fully and independently, whether or not the confession was made voluntarily;
 "(4) Cause all evidence adduced at the hearing to be recorded, file a statement of record setting forth his findings on issues of fact and his conclusions as to whether the confession was made voluntarily, and enter an order granting or denying the relief; * * *."

3. Rule 323 is a procedural rule. It is pertinent to note that in Sims v. Georgia, 385 U.S. 538, 542, 87 S.Ct. 639, 17 L.Ed. 593 (1967), it was said that Jackson v. Denno, too, "set down" a "rule" "for the procedural determination of the voluntariness of a confession."

process should be discriminatingly and clinically premised on the facts presented in a particular case, and the context of the whole criminal trial under review, and not a fragmented isolated part of a trial.

Here, as earlier stated, the state trial record amply demonstrates that the relator *was* in fact granted a full public trial on the issue of the voluntariness of his confession when the jury trial was resumed following the conclusion of the Jackson v. Denno hearing. Further, the Jackson v. Denno hearing conducted by the state judge can scarcely be likened to the English Court of Star Chamber, the "secret trials" of the Spanish Inquisition, or the French monarchy's abuse of *lettre de cachet*. In consonance with the provisions of Rule 323(c) (3), the Jackson v. Denno hearing in the instant case was attended by the defendant, his counsel, his witnesses, the State's counsel and state witnesses, Court officers and the Court stenographer. The latter fully recorded the full hearing and filed a transcript of the testimony as part of the record of the relator's criminal case.

It is pertinent here to note that the majority concedes that *"the evident purpose of the rule [Rule 323] requiring the exclusion of the public from the hearing is to protect the defendant at the trial from the prejudice which might follow from public knowledge of the existence of a confession which has been ruled inadmissible."* (Emphasis supplied.)

It concludes, however, without saying so in terms, that Rule 323 is fundamentally prejudicial, in that it operates to deprive the defendant of certain "elements" of a public trial which it spells out as follows:

"A few of the basic elements in policy underlying the guarantee of a public trial affect the question before us. The searchlight of a trial open to the public serves as a restraint against the abuse of judicial power and also against possible perjury by witnesses

who know that their testimony is exposed to public knowledge. Another element is that a public trial may lead, even accidentally, to the appearance of an important witness who, having heard the testimony, may come forward with relevant new evidence which may help the defendant.

"* * * Thus the desirability of the public exposure of the claims and denials of coerced confessions, the policy that judicial proceedings be under the scrutiny of the general public in order to avoid judicial oppression and to discourage perjury, and the provision for the possibility that one who has valuable information might stray into the courtroom as a spectator and hear the proceeding, all are as relevant to a Jackson v. Denno hearing as to a full trial. From this conclusion it follows that such a hearing falls within the constitutional requirement that in criminal prosecutions all trials should be public."

As to the first "element", the "restraint * * * against possible perjury by witnesses", it need only be said that the police witnesses as to the confession—and they were the only witnesses on the score of the relator's confession—*did* testify at the jury trial after the state judge had denied the relator's motion to suppress at the conclusion of the Jackson v. Denno hearing, and their testimony was "exposed to public knowledge."

As to the second "element", "* * the possibility that one who has valuable information might stray into the courtroom as a spectator and hear the proceeding, * * *", this must be said:

The "possibility" that a "stray" spectator may have "valuable information" as to the circumstances prevailing when police obtain a defendant's confession is so remote that it lacks ascertainable dimension and dwindles to the vanishing point. Judicial notice may be taken of

the fact that police procedures in questioning suspects are pursued in restricted police quarters or in places inaccessible to the public. Given this circumstance, who might the hypothetical "stray" witness be?

Relevant and pertinent on the score of the foregoing, is this statement, in another context, by the revered late Mr. Justice Cardozo, in Snyder v. Massachusetts, *supra*:

> "There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—*if gossamer possibilities of prejudice* to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction · in obedience to local law, and set the guilty free." 291 U.S. at page 122, 54 S.Ct. at page 338. (Emphasis supplied.)

There remains this to be said:

The majority has premised its vacation of the District Court's Order denying the relator's petition for a writ of habeas corpus on the grounds that the Sixth Amendment's requirement of a "public" trial was violated because the relator's Jackson v. Denno hearing was not "public".

The majority has not reached the merits of the relator's contention on this appeal that the District Court erred in finding that his confession was voluntary and that he had not been denied the assistance of counsel.

The record discloses that the District Court afforded a full hearing to the relator on these aspects of his appeal. It found against the relator in a carefully considered and exhaustive Opinion.

I would affirm the District Court's Order denying the habeas corpus writ for the reasons so well stated in Judge Body's Opinion.

Chief Judge HASTIE and Circuit Judge ALDISERT join in this dissent.

ALDISERT, Circuit Judge (dissenting).

I join in the dissenting opinion cogently expressed by Judge Kalodner. I offer only the additional observation that whatever be the form of the Jackson v. Denno hearing in other jurisdictions, the Pennsylvania schema contains built-in safeguards which guarantee to the *defendant* a public hearing where the subject matter of the hearing may be used against him. The same guarantee does not extend to the *prosecution,* but this should cause us no concern. It is the commandment of the Sixth Amendment that "the *accused* shall enjoy the right to a * * * public trial."

Under the Pennsylvania practice—followed in the case at bar—the only non-public aspect of the proceedings is the hearing to determine whether the confession was voluntary as a matter of law. If, at this stage, the court rules that the confession may not be introduced at trial, then the defendant cannot possibly be prejudiced by the quasi-private nature of the hearing. This very adjudication operates as a resolution of the voluntariness issue in his favor.

Conversely, if a contrary decision is reached, the Pennsylvania practice commands that the voluntariness vel non of the confession be submitted for factual determination by the jury from evidence presented in the open environment of a public trial. Thus, the weighty policy considerations, discussed by the majority, which recommend "the searchlight of a trial open to the public," are recognized and satisfied by the Pennsylvania procedures.

We do not have before us an evaluation of the practice followed in those jurisdictions where the judge alone, in the confines of the Jackson v. Denno hearing, makes a final determination that the confession is voluntary and

therefore admissible. In such a case, it could be argued convincingly that a public forum had been denied.

In this case, the preliminary hearing was conducted in the quasi-private setting purposely designed to protect the defendant's constitutional rights and to accord him the maximum assurance that the fact finder at his trial on the merits would receive as evidence only that which was legally competent. But the subject matter adduced at the hearing reached the fact finder only in an open courtroom at which the public was not excluded. Under these circumstances the appellant should not be heard to complain that he was denied a public trial.

I would affirm the judgment of the district court.

Chief Judge HASTIE joins in this opinion.